IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOSE OCASIO,

    Petitioner,                      No. CIV S-06-0011 GEB DAD P

    vs.

JAMES A. YATES, Warden,

    Respondent.                 FINDINGS AND RECOMMENDATIONS

/

        Petitioner is a state prisoner, proceeding pro se, with an application for writ of habeas corpus pursuant to 28 U.S.C. § 2254. On November 6, 2001, in the San Joaquin County Superior Court petitioner was convicted of second degree murder in violation of California Penal Code § 187. (Pet. at 1.) He was subsequently sentenced to fifteen years-to-life in state prison. (Id.) Petitioner alleges that the trial judge deprived him of his right to trial by jury, in violation of the Sixth and Fourteenth Amendments, when he refused the jury's request for new verdict forms and instead polled the jurors in open court. (Id. at 5.) In addition, petitioner alleges that there was insufficient evidence introduced at his trial to prove the element of intent necessary to convict him of second degree murder. (Id.) Upon consideration of the record and the applicable law, the undersigned will recommend that petitioner's application for habeas corpus relief be denied.

FACTUAL BACKGROUND[1]

> [Petitioner] was convicted of murdering Sonia Treadway, a woman with whom he had a romantic relationship. The prosecution presented evidence that Treadway was at a holiday office party waiting for [petitioner] and became intoxicated. After [petitioner] arrived about 11:30p.m., he took her home to her apartment. Shortly thereafter, Treadway was shot in the face by a gun muzzle placed against her lips. [Petitioner] called 911 at about 12:17a.m. and again 26 minutes later.
>
> [Petitioner] testified at trial. He admitted he brought a loaded .9 millimeter handgun to Treadway's apartment, although he was a felon. He admitted shooting Treadway but claimed the gun accidentally went off when he was trying to take it from Treadway. [Petitioner] initially lied because he thought the 911 operator and the police would not believe the shooting was accidental.

(Opinion at 2.)

PROCEDURAL BACKGROUND

On direct appeal from his conviction petitioner argued that the trial court had erred by refusing the jury's request for new verdict forms and instead polling the jurors in open court in a coercive fashion. (Answer, Lod. Doc. No. 1.) The California Court of Appeal for the Third Appellate District rejected his argument and affirmed petitioner's judgment of conviction. (Opinion at 11; Traverse at 1.) On July 17, 2003, petitioner filed a petition for review with the California Supreme Court. (Answer, Lod. Doc. No. 4.) That petition for review was summarily denied on August 20, 2003. (Id., Lod. Doc. No. 5.)

On October 4, 2004, petitioner filed an application for writ of habeas corpus with the California Court of Appeal for the Third Appellate District, raising both the jury coercion and insufficiency of the evidence claims presented in the instant petition. (Answer, Lod. Doc. No. 6.) The state appellate court summarily denied that petition on October 7, 2004. (Answer, Lod. Doc. No. 7.) On November 4, 2004, petitioner filed an application for writ of habeas corpus

---

[1] This statement of facts is taken from the unpublished opinion of the California Court of Appeal for the Third Appellate District (hereinafter "Opinion") lodged by respondent on March 6, 2006, as Lodged Document No. 3.

2

with the California Supreme Court presenting both claims. (Answer, Lod. Doc. No. 8.) That petition was summarily denied on September 7, 2005. (Answer, Lod. Doc. No. 9.)

ANALYSIS

I. Standards of Review Applicable to Habeas Corpus Claims

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts. See Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)). A federal writ is not available for alleged error in the interpretation or application of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085. Habeas corpus cannot be utilized to try state issues de novo. Milton v. Wainwright, 407 U.S. 371, 377 (1972).

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d 1062, 1067 (9th Cir. 2003). Section 2254(d) sets forth the following standards for granting habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001). If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review

3

of a habeas petitioner's claims. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008). See also Frantz v. Hazey, 513 F.3d 1002, 1013 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d). Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000). When it is clear that a state court has not reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the AEDPA's deferential standard does not apply and a federal habeas court must review the claim de novo. Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

II. Petitioner's Claims

    1. Jury Coercion

As noted above, petitioner alleges that the trial court "erred and deprived [him] of his rights to trial by jury in violation of the Sixth and Fourteenth Amendments when it refused [the] jury's request for new verdict forms so it could remedy inconsistent verdict [sic]." (Pet. at 4.) In support of his claim petitioner states:

> [I]n response to the jury's inconsistent and otherwise flawed verdict forms, the trial court refused to provide the jury with new verdict forms and instead polled the jurors in open court in the presence of the victim's family members as to whether each juror agreed that [petitioner] was guilty of second degree murder. The court's conduct risked coercing one or more of the jurors into

/////

4

1  convicting Petitioner of second degree murder and abandoning any consideration of the lesser involuntary manslaughter.

(Id.)

In its decision affirming petitioner's judgment of conviction the California Court of Appeal[2] set forth the background relevant to this claim as follows.

> The jury was instructed with the elements of first and second degree murder and voluntary and involuntary manslaughter. The trial court explained the jury must unanimously agree on the degree of murder or acquit defendant of murder. The verdict forms were shown to the jury along with an instruction explaining that, although the jury could consider all the lesser charges in whatever order it wished, the court could not accept a guilty verdict on a lesser charge unless the jury acquitted defendant of a greater charge. (CALJIC No. 17.49)
>
> The jury deliberated for three days. It sought a reread of testimony and asked several questions.[3]
>
> The jury sent a note to the trial court stating it had reached a verdict. In court, the foreperson said there was a unanimous verdict and agreed with the trial judge that he or she had signed and dated the appropriate verdict forms. The foreperson also stated "there is one section on the bottom we did not sign." The trial court replied:
>
> "If there is any finding that requires agreement, it needs to be signed, but I'll tell you what, I'll take a look at it and see if it needs to be signed. But before you give it to me, do the verdicts, do they represent the unanimous agreement of all 12 members of the jury?"

---

[2] The last reasoned state court judgment rejecting this claim was the opinion of the California Court of Appeal affirming petitioner's judgment of conviction on appeal. The Supreme Court summarily denied his petition for review. (Answer, Lod. Doc. No. 5.) Likewise, the California Court of Appeal and the California Supreme Court summarily denied petitioner's subsequent applications for habeas relief. (Id., Lod. Doc. Nos. 7 & 9.) This court looks through those unexplained rulings to the California Court of Appeal's decision on direct appeal. See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same grounds.").

[3] Juror No. 3 sought an audience with the trial judge and complained he or she was not thinking clearly and was "on sort of the minority side." The juror complained of stress. After being advised of the jury's duty to deliberate, the juror indicated he or she would try. [Petitioner] did not object to the trial court's admonition or the juror's retention.

5

"JUROR NUMBER ONE: Yes, sir."

The trial court asked to see the verdicts. The trial court then announced there was a problem because ". . . we have a signed guilty of second-degree murder, we have a signed guilty of murder without a degree, we also have a signed involuntary manslaughter. So that–and then–then it also says not guilty on the top."[4]

The trial court stated, "But a guilty of a murder in the second degree and guilty of manslaughter [are] inconsistent." After explaining to the jury that, although a person guilty of the greater offense also would be guilty of the lesser offense, in order to find a defendant guilty of murder, "we don't get into manslaughter at all." The trial court took a recess to research the problem. Upon reconvening outside the jury's presence, the trial court announced that the verdicts were inconsistent and it intended to poll the jury with regard to the second degree murder verdict. Defense counsel objected, arguing that the court's action was "akin to making them deliberate in front of an audience, especially with–in front of the family members of the victim here. I think it's too suggestive and I think that it would be too easy for later jurors to acquiesce in . . . the polling–in the polling of earlier ones. [¶] So the defense objects to this and asks instead that the Court just submit brand new verdict forms to the jurors and let them deliberate–let them take them in to deliberate on those with further instructions on how deliberations should proceed."

The prosecutor responded that verdict forms need not actually be provided at all–that they were merely a convenience. The prosecutor then raised the question concerning the jury's failure to make any finding on the firearm allegation.

The trial court called the jury back in order to poll them. Before that process began, the foreperson handed the court a note asking for "new verdict forms to correct clerical error." Instead, the court told the jury it would poll them individually as to second degree murder.

---

[4] The clerk's transcript shows the three documents. The first verdict form has a handwritten "guilty" notation. The foreperson signed one line stating [petitioner] was guilty of murder. Under "degree," the foreperson signed another line fixing the degree of the murder as "second degree." The last section concerning the firearm use allegation is signed by the foreperson, with an "x" on the line of "untrue." The other two forms are filed with the notation "not accepted by the court" and "not guilty" at the top. The second form contains the foreperson's signature under the first section of guilty of murder but no signatures under the "first degree" section or firearm sections. The third form contains the foreperson's signature on the guilty of involuntary manslaughter line but no other signatures. The verdict forms which include not guilty of murder, guilty of voluntary manslaughter, not guilty of voluntary manslaughter, and not guilty of involuntary manslaughter, are unsigned.

6

> Each juror individually agreed defendant was guilty of murder and that it was second degree.
>
> Defense counsel stated he had no objection to recording the verdict outside the presence of the jury and the court ordered the clerk to record the verdict as second degree murder.
>
> The trial court then told the jury there was one other issue–whether defendant intentionally and personally used a firearm and proximately caused death. The trial court sent the jurors back to deliberate on the firearm use allegations, returning to them the form which contained the guilty verdict of second degree murder but which did not contain a finding on the firearm allegation.
>
> The jury returned with the completed form, finding the use of a handgun not true.

(Opinion at 2-6.)

In rejecting petitioner's contention that the jury's verdict was improperly coerced by the trial court's actions, the state appellate court reasoned as follows.

> [Petitioner] contends the first three verdict forms returned were "inconsistent and therefore invalid," because a jury may not convict a defendant of both greater and lesser offenses. [Petitioner] argues that the verdicts were not clear and unambiguous and evidence more than "technical defects." [Petitioner] argues the trial court was "obligated" to send the jury back to deliberate, and that polling the jurors was impermissible.
>
> We conclude a valid unanimous verdict on second degree murder had been reached before the verdict forms were presented. There is no evidence the jury misunderstood the law. The verdict forms turned in were confused, but not contradictory. The forms did not acquit defendant of murder. Therefore, further deliberations were not required and the polling was proper.
>
> A jury does not render a verdict until it is orally declared in open court. People v. Lankford, 55 Cal. App. 3d 203, 211 (1976). Any decisions reached during deliberations are merely preliminary. (Ibid.) "'[A] jury has not reached a valid verdict until deliberations are over, the result is announced in open court, and no dissent by a juror is registered.'" United States v. Love, 597 F.2d 81, 85 (6th Cir. 1979). Until then, any juror may declare his or her disagreement with the verdict, in which case the jury must be sent out for further deliberation. Chipman v. Superior Court, 131 Cal. App. 3d 263, 266 (1982). In People v. Jenkins, (1880) 56 Cal. 4, and page 7, our Supreme Court said:

> "It is the duty of a Court to look after the form and substance of a verdict, so as to prevent a doubtful or insufficient finding from passing into the records of the Court; for that purpose the Court can, at any time while the jury are before it, and under its control, see that it is amended in form so as to meet the requirements of the law."
>
> A trial court may return a jury to further deliberations if it believes the jury has misunderstood the law. This decision is governed by the permissive language of [California Penal Code] section 1161.[5] The law is clear that, even if there is some ambiguity about the verdict after the statements of each juror, returning the jury to deliberation is a permissible procedure, not a mandatory one. In re Chapman, 64 Cal. App. 3d 806, 814 (1976). Section 1161 does not support [petitioner's] argument that the trial court was obligated to return the jury for deliberations on the murder charge, because there is no evidence the jury misunderstood the law.
>
> The only time a jury *must* be sent back for further deliberations is when there is no agreement after polling or when no finding has been made at all. (§§ 1163, 1164.)
>
> Section 1163 provides:
>
> "When a verdict is rendered, and before it is recorded, the jury may be polled, at the request of either party, in which case they must be severally asked whether it is their verdict, and if anyone answer in the negative, the jury must be sent out for further deliberation."
>
> Section 1164 reads, in relevant part:
>
> "When the verdict given is received by the court, the clerk shall record it in full upon the minutes, and if requested by any party shall read it to the jury, and inquire of them whether it is their verdict. If any juror disagrees, the fact shall be entered upon the minutes and the jury again sent out; but if no disagreement is expressed, the verdict is complete, and the jury shall, . . . be discharged from the case."

---

[5] [California Penal Code] Section 1161 provides: "When there is a verdict of conviction, in which it appears to the court that the jury have mistaken the law, the court may explain the reason for that opinion and direct the jury to reconsider their verdict, and if, after the reconsideration, they return the same verdict, it must be entered; but when there is a verdict of acquittal, the court cannot require the jury to reconsider it. If the jury renders a verdict which is neither general or special, the court may direct them to reconsider it, and it cannot be recorded until it is <u>rendered in some form</u> from which it can be clearly understood that the intent of the jury is either to render a general verdict or to find the facts specially and to leave the judgment to the court." (Emphasis added.)

Technical defects in the form of a verdict do not render it invalid when the jury's intent to convict of a specified offense is clear and the substantial rights of the defendant are unaffected. People v. Webster, 54 Cal. 3d 411, 447 (1991). The inclusion of surplus language on a verdict form is not fatal. People v. Allen, 41 Cal. App. 3d 821, 826 (1974). A verdict form "need not restate the legal principles provided in proper instructions. Indeed, as a rule it is not reversible error to fail to provide the jury with a verdict form at all [citation], though plainly it is the better practice." People v. Ochoa, 19 Cal. 4th 353, 426-47 (1998).

In this case, the jury twice announced it had reached a unanimous verdict. Deliberations on the substantive count were over. The only clerical error is that the foreperson signed the involuntary manslaughter guilty verdict and a general guilty murder verdict, as well as the specific second degree murder verdict. Moreover, the fact that this was a clerical error and not a disagreement or lack of unanimity, is borne out by the jury's own concomitant request for new forms to correct its clerical errors.[6]

The trial court acted properly in using polling to determine whether there was a lack of unanimity concerning the verdict or a clerical error in filling out the forms. The fact that the incomplete verdict forms included extraneous notations of "not guilty" on the guilty verdict forms for murder and manslaughter did not make them inconsistent because they confirmed the jury's agreement to guilt of second degree murder.

[Petitioner's] reliance on People v. Schroeder, 96 Cal. App. 3d 730 (1979), does not assist his argument. In People v. Schroeder, *supra*, the appellate court held a complete omission of a finding from a verdict form should be corrected by directing the jury to reconsider it. (Citation omitted). We agree with [petitioner's] argument insofar as the trial court properly returned the jury for deliberation on the firearm use allegation, because the jury had made no finding at all on that allegation. The annotated verdict forms did not indicate omission of any other finding.

Further, the jury's subsequent decision to find the firearm enhancement not true is not, in our view, evidence that the jury intended to convict defendant of something less than second degree murder. We bear in mind that "'[a]n acquittal is not a finding of any fact. An acquittal can only be an acknowledgment that the government failed to prove an essential element of the offense

---

[6] [Petitioner] is correct that a defendant may not be convicted of both greater and lesser included offenses, but that is not what occurred. Even if we accepted [petitioner's] argument that there were improper multiple convictions, the remedy would be to reverse the lesser offense(s). People v. Pearson, 42 Cal. 3d 351, 355 (1986).

9

> beyond a reasonable doubt.' [Citations.]." Santamaria v. Horsley, 133 F.3d 1242, 1246 (9th Cir. 1998).[7]
>
> [Petitioner's] argument that the polling was unconstitutionally "coercive" because it was done in open court is countered by the brief inquiry made by the trial court. The jurors were not asked about first degree murder. No juror indicated any hesitation about a second degree murder verdict. Nothing in the record indicates that there was anything but a completed verdict before the jury returned to the courtroom.[8]
>
> Finally, even if we assumed error, [petitioner] has failed to demonstrate that his claimed violation of section 1161 was actually prejudicial under any standard. The jury had the opportunity to reconvene and discuss its verdict when it retired to make a finding on the firearm use allegation. The fact that the jury found that allegation not true, in the light of substantial evidence to support it, is persuasive evidence of a lack of coercion arising from the public polling. Error, without a showing of prejudice, provides no grounds for reversal. Cal. Const., Art. VI, §13.

(Opinion at 2-11) (footnotes in original).

The undersigned concludes that the state appellate court's determination that petitioner's jury was not coerced to return a guilty verdict on the second degree murder charge is not an unreasonable application of clearly established federal law nor did it result from an unreasonable determination of the facts. The Sixth Amendment right to a jury trial has been made applicable to the states through the Fourteenth Amendment. See Duncan v. Louisiana, 391 U.S. 145, 149 (1968). As the U.S. Supreme Court has recognized,

> [T]he right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors. 'The failure to accord an accused a fair hearing violates even the minimal standards of due process[.]'

---

[7] The jury may have been convinced of guilt but arrived at an inconsistent acquittal by "mistake, compromise, or lenity . . . ." United States v. Powell, 469 U.S. 57, 6[9] (1984)[citation omitted]; People v. Lewis, 25 Cal. 4th 610, 656 (2001). Because the [petitioner] is given the benefit of the acquittal, "it is neither irrational nor illogical to require [him] to accept the burden of conviction on the counts on which the jury convicted." United States v. Powell, 469 U.S. at 69 [citation omitted].

[8] [Petitioner] does not argue that the verdicts were irreconcilable and it is unnecessary to discuss that issue.

Irwin v. Dowd, 366 U.S. 717, 722 (1961) (citations omitted).  "Any criminal defendant . . . being tried by a jury is entitled to the uncoerced verdict of that body."  Lowenfield v. Phelps, 484 U.S. 231, 241 (1988).  As the Ninth Circuit Court of Appeals recently stated:

> Coercion can occur when, for example, a district court tells a jury that it must reach a decision, Jenkins v. United States, 380 U.S. 445, 446 [parallel citations omitted] (1965), a district court polls a jury before it reaches a verdict, Brasfield v. United States, 272 U.S. 448, 449-50 [parallel citations omitted] (1926), or a special verdict form reformulate[s] the elements of the crime, United States v. Reed, 147 F.3d 1178, 1181 (9th Cir.1998).

United States v. McCaleb, 552 F.3d 1053, 1057-58 (9th Cir. 2009).  The potential coercive effect of a charge to a jury is to be evaluated "in its context and under all the circumstances."  Lowenfield, 484 U.S. at 239 (quoting Jenkins v. United States, 380 U.S. 445, 446 (1965)).

Some further examination of the record in addition to those portions referred to by the state appellate court is warranted.  Petitioner's jury was instructed that:

> In order to reach a verdict, all 12 jurors must agree to the decision and to any finding you've been instructed to include in your verdict. [¶] As soon as you've–as soon as you've agreed upon a verdict so that, when polled, each may state truthfully that the verdict expresses his or her vote, have it dated and signed by the foreperson and then return with it to this courtroom.  Return any unsigned verdict forms.

(RT at 1006.) The judge reiterated in his instructions that the foreperson was to sign and date each verdict form that applied.  (RT at 1008.)  Two days into the deliberations one of the jurors requested to speak with the judge and did so in the presence of both counsel.  The juror in question then returned to the jury room for deliberations which continued to the end of that day when the jury was sent home for a three-day weekend.[9]  (RT at 1024.)

---

[9] In these habeas proceedings, petitioner has incorporated by reference the appellate briefs submitted on his behalf in state court.  Those appellate briefs may be read as vaguely suggesting that the trial court's discussions with this juror were somehow coercive.  A review of the record establishes such was clearly not the case.  (RT at 1020-22.)  Without prompting, the juror advised the trial judge that he/she was "not thinking clearly" and was "on sort of the minority side."  (RT at 1020.)  The trial judge stopped the juror from disclosing anything further about where the deliberations stood and instead directed questions to determine whether there was any medical or mental condition that would disqualify the juror from continuing to serve.

11

1    Deliberations resumed the following week and at 2:55 p.m. on the first day back
2 the judge received a note from the jury indicating that they had reached a verdict. (RT at 1026;
3 see also Answer, Lod. Doc. 11, Clerk's Transcript (hereinafter CT) at 387, 389; Opinion at 3.)
4 When confronted with the somewhat confusing verdict forms, which he referred to as
5 inconsistent, the trial judge took a recess to consider how to proceed. Following further
6 consideration of the verdict forms returned by the jury, court was reconvened with all parties and
7 the jury present. The trial judge had decided to poll the jury on their verdict with respect to
8 second degree murder.[10] Before doing so, the trial judge accepted another note from the jury and,
9 after reading it, began polling them stating as follows:

> THE COURT: Okay, It says we need new verdict forms to correct
> our clerical error. [¶] I think in–I think the best way to handle this
> is for me to poll the jurors, starting with the murder verdict. I'm
> going to poll you individually and ask if that is your verdict. And
> that is finding that the [petitioner] is guilty of murder and that it is
> murder in the second degree. [¶] So I'm going to ask each of you if
> that is your verdict. If that's your verdict, please answer yes. If
> that is not your verdict, please answer no. [¶] Does anyone have
> any question about what I'm going to do now? [¶] Okay.

15 (RT at 1030-31.)
16    The polling then took place, with each of the twelve jurors clearly and
17 unequivocally responding that they had found the defendant guilty of murder and that they fixed
18 the degree to be murder in the second degree. (RT at 1031-34.) Each responded in the same

---

(RT at 1020-21.) Upon determining that not to be the case, the trial judge spoke to the juror about the duty to deliberate but emphasized that it was acceptable that "jurors do not always agree unanimously" and reminded the juror of the oath by which the jurors had promised to make a just decision based upon the law and the facts as each juror found them to be. (RT at 1021.) There was nothing coercive about this, or any other, exchange the trial judge had with the jury.

[10] This was entirely reasonable under the circumstances described above. The jury returned to the trial judge a signed verdict form finding petitioner guilty of second degree murder with no extraneous reference to "not guilty" on that form. (CT at 223.) They also provided the court with other incomplete verdict forms. (CT at 390-96.) As the California Court of Appeal stated, "the fact that the incomplete verdict forms included extraneous notations of 'not guilty' on the guilty verdict forms for murder and manslaughter did not make them inconsistent because they confirmed the jury's agreement to guilt of second degree murder." (Opinion at 9-10.)

manner. (Id.) Only after confirming that this was the jury's verdict on the substantive charge did the trial judge send the jury back to deliberate on the issue of whether petitioner had personally discharged a firearm, proximately causing the death of the victim. (RT at 1034.) The jury returned a not true finding as to that use of a firearm allegation. (RT at 1035-36.) The entire verdict, guilty of second degree murder and not true as to the firearm allegation, was then read into the record by the Clerk. (Id.) Counsel for petitioner waived any further polling of the jurors as to their verdict. (RT at 1036.) The verdicts were then recorded.

Petitioner's claim is based on his assertion that the trial judge was required to submit new verdict forms to the jury and direct them to return to their deliberations as well as on the notion that polling the jury as to the second degree murder verdict in open court, presumably with members of the victim's family present, was inherently coercive. No clearly established federal law required the submission of new verdict forms or further deliberations under these circumstances. See Slocum v. United States, 325 F.2d 465, 467-68 (8th Cir. 1963) (no error where foreperson inadvertently signed both not guilty and guilty verdict forms while lining through the latter, both of which were read, where the trial judge confirmed with the foreperson that the guilty verdict was the verdict of all the jurors and by polling the jury as to that verdict); see also United States v. Mears, 614 F.2d 1175, 1179 (8th Cir. 1980) (where verdict was read in court declaring the defendant not guilty and foreperson advised the court that the verdict form had been incorrectly signed, the court properly cured any ambiguity in the verdict by polling each juror to determine that the second verdict of guilty was the correct verdict).[11]

Here, the jury indicated to the court that the foreperson's signing of the murder without degree and voluntary manslaughter verdict forms with the "not guilty" notation, was a mere clerical error and that the jury had reached a unanimous verdict as to the second degree

---

[11] While the trial judge no doubt had the discretion to elect to resubmit verdict forms to the jury for clarification, he was not constitutionally required to do so, so long as he did not seek to push the jury in one direction or another. The record establishes that he did not.

murder charge.  Moreover, there is absolutely no evidence in this record that the trial court told the jury that it was required to reach a verdict, polled the jury before it had reached a verdict, reformulated the elements of the crime charged or in any other way coerced a verdict.  See McCaleb, 552 F.3d at 1057-58.  Indeed, when considered in context and under all the circumstances, the record establishes quite to the contrary.  See Lowenfield, 484 U.S. at 239; Jenkins, 380 U.S. at 446.  Given this record, the state appellate court's decision was neither contrary to or an unreasonable application of clearly established federal law.  Accordingly, petitioner is not entitled to federal habeas relief on this claim.

2. Insufficiency of the Evidence

Petitioner alleges that there was insufficient evidence to support his conviction on the second degree murder charge.  Specifically, petitioner argues that the prosecution failed to prove beyond a reasonable doubt that he acted with the requisite intent.  (Pet. at 4, Traverse at 9.) Because the state courts summarily rejected this claim by petitioner, this court has independently reviewed the entire record and determined that petitioner is not entitled to federal habeas relief with respect to this claim.  Himes, 336 F.3d at 853.

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  In re Winship, 397 U.S. 358, 364 (1970).  There is sufficient evidence to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319 (1979).  "[T]he dispositive question under Jackson is 'whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.'"  Chein v. Shumsky, 373 F.3d 978, 982-983 (9th Cir. 2004) (quoting Jackson, 443 U.S. at 318).  "A petitioner for a federal writ of habeas corpus faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds."  Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir.

14

2005). In order to grant the writ, the federal habeas court must find that the decision of the state court reflected an objectively unreasonable application of Jackson and Winship to the facts of the case. Id. at 1275 & n.13.

The court must review the entire record when the sufficiency of the evidence is challenged in habeas proceedings. Adamson v. Ricketts, 758 F.2d 441, 448 n.11 (9th Cir. 1985), vacated on other grounds, 789 F.2d 722 (9th Cir. 1986) (en banc), rev'd, 483 U.S. 1 (1987). It is the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319. If the trier of fact could draw conflicting inferences from the evidence, the court in its review will assign the inference that favors conviction. McMillan v. Gomez, 19 F.3d 465, 469 (9th Cir. 1994). The relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but whether the jury could reasonably arrive at its verdict. United States v. Mares, 940 F.2d 455, 458 (9th Cir. 1991). Thus, "[t]he question is not whether we are personally convinced beyond a reasonable doubt" but rather "whether rational jurors could reach the conclusion that these jurors reached." Roehler v. Borg, 945 F.2d 303, 306 (9th Cir. 1991). The federal habeas court determines sufficiency of the evidence in reference to the substantive elements of the criminal offense as defined by state law. Jackson, 443 U.S. at 324 n.16; Chein, 373 F.3d at 983.

In this case, petitioner was convicted of second degree murder in violation of California Penal Code § 187, which reads: "(a) Murder is the unlawful killing of a human being, or a fetus, with malice aforethought." Malice is then defined as follows:

> Such malice may be express or implied. It is express when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature. It is implied, when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart. [¶] When it is shown that the killing resulted from the intentional doing of an act with express or implied malice as defined above, no other mental state need be shown to establish the mental state of malice aforethought.

/////

Cal. Penal Code § 188.  The differentiation between first and second degree murder under California law is defined as follows:

> All murder which is perpetrated by means of a destructive device or explosive, a weapon of mass destruction, knowing use of ammunition designed primarily to penetrate metal or armor, poison, lying in wait, torture, or by any other kind of willful, deliberate, and premeditated killing, or which is committed in the perpetration of, or attempt to perpetrate, arson, rape, carjacking, robbery, burglary, mayhem, kidnapping, train wrecking . . . is murder in the first degree.  All other kinds of murders are of the second degree.

Cal. Penal Code § 189.

Viewing the evidence in the light most favorable to the verdict, the undersigned concludes that there was sufficient evidence from which a rational trier of fact could have found beyond a reasonable doubt that petitioner acted with the intent to kill the victim.  The jury heard the following testimony.  The victim, petitioner's girlfriend, was upset and emotional at a party on the night in question and petitioner was present, acting unpleasant and serious.  (RT at 107-08, 112, 135, 140, 166).  Petitioner was angry and seemed mad when he left the party, taking the victim with him.  (RT at 140, 166.)  Less than an hour later, Stockton police responded to a report of shots fired at the victim's apartment where she was found dead as a result of a single bullet to the face.  (RT at 247-49, 259-60, 420-21.)  Petitioner and his father were inside the victim's apartment when police arrived and appeared upset.  (RT at 253-55.)  Petitioner initially told police that he had come to the victim's apartment and, after hearing gunshots, entered to find her wounded.  (RT at 300-02.)  After a break in questioning and after speaking with his father, petitioner admitted that he had lied initially and told the police that the shooting occurred accidentally as he tried to wrestle the gun away from his girlfriend as she brandished it.  (RT at 14, 530-31 & 537.)  At trial, petitioner admitted to bringing a loaded gun to the victim's apartment.  (RT at 663-64.)  Gunshot particles were found on his right hand but not on his left hand and no such particles were found on the hands of the victim or petitioner's father.  (RT at 576, 583-85.)

1    Viewing this evidence in the light most favorable to the verdict, the jurors could
2    have reasonably inferred that petitioner acted with the deliberate intent of killing the victim and
3    thus convicted him of second degree murder.[12]  Accordingly, petitioner is not entitled to habeas
4    relief on his claim that there was insufficient evidence to support his conviction.

## CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 19, 2009.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:3
ocasio0011.hc

---

[12] The court also finds unpersuasive petitioner's suggestion that he is entitled to habeas relief based upon the alleged inconsistency between the jury's guilty verdict on the second degree murder charge and its "untrue" finding as to the use of a firearm allegation.  As the California Court of Appeal recognized, it is a jury's prerogative to return inconsistent verdicts in a criminal case and to acquit out of leniency.  Dunn v. United States, 284 U.S. 390 (1932); United States v. Martorano, 557 F.2d 1, 9 (1st Cir. 1977); United States v. Zane, 495 F.2d 683, 690-91 (2d Cir. 1974); United States v. Walker, 586 F. Supp. 42, 43 (E.D.N.Y. 1984); Bigelow v. Superior Court, 208 Cal. App. 3d 1127, 1134-36 (1989).